Good morning, Your Honors. May it please the Court, my name is Raina Tanner, and I represent Petitioner, Ms. Eva Cristobal Zavala. At this time, I would like to reserve two minutes for rebuttal. Ms. Cristobal is the victim of an unscrupulous notary who failed to file a procedurally proper notice of appeal. As a result, Ms. Cristobal will be removed from the United States without any appellate review. Would you, Your Honors, like a brief recitation of the facts? Well, it's up to you. Briefly, Your Honor, Ms. Cristobal hired an attorney named Mr. Sergio Picasso to file an asylum application and subsequent cancellation of removal application. Both were denied by the immigration judge in August of 2001. Instead of timely appealing to the board within 30 days, as he told her he would, he failed to file a procedurally proper notice of appeal for five months, four months beyond the allowed time. He filed, but he didn't enclose the check? Right. It was not procedurally correct in his filing. And then what happened was it was then sent back to him within the 30-day period, and instead of filing with the correct He then was denied as it was rejected, and he filed an untimely motion to reconsider as well. It was due within 30 days. He waited two months. He filed a petition for review before this Court as well, all along claiming to her that he had the right to do these things. This is fraud by a notary. He is not allowed to file a Ninth Circuit or Board of Immigration appeals. He is not a legal representative of the California State Bar or any other bar. He told her he could, and he did. He filed in pro se, lying to her, telling her he was filing for her. Ms. Christobal was unaware of what was happening to her until her husband read the brief in December of 2002. At that time, the Office of Immigration Litigation filed a brief, and her husband looked at it, and as you are aware, these briefs are very illegal in nature, contain extensive legalese and complex language, and he sought assistance. He went to find help. What do we do now? Some attorneys told him, go back to Mexico. Tell your wife to go back. Other attorneys told him, we don't represent anyone in the Ninth Circuit. Finally, she went to Catholic Charities. Catholic Charities referred her to Catholic Charities. In December of 2002 is when she found out. She first read the brief, and in her declaration, which is what we have before this. No, no. The question was, she read the brief then, and then she went to a number of lawyers. Yes. And then she went to Catholic Charities. When did she go to Catholic Charities? It took her within nine months to do so, because at that time, she was... You're telling me that she didn't go to Catholic Charities until September? Although the administrative record is unclear as to the exact date that she went, yes, it was between January of 2002 when she first started seeking...2003, excuse me, when she started seeking assistance, and arrived in our office on September 23rd of 2002. Okay, but I don't think you've still answered my question. Do we know when she went to Catholic Charities? Not the exact date, Your Honor, no. Do we have a month? No, we do not, Your Honor. Okay, so all we have is a range of nine months that she evidently sought counsel and had people tell her various things, and then somebody suggested that she go to Catholic Charities, but we don't know when she went to Catholic Charities. No, we do not know the exact date that she went to Catholic Charities. So it could have been September, it could have been January. It could have been in January, however, she did seek several attorneys, and her declaration is clear that her husband...they did not understand at this point that there was fraud. Neither Mr. Cristobal, Ms. Cristobal, nor her husband understood. But they did know in December of 2002 that things hadn't been filed on time. What they knew was what the government's brief stated, and the level of knowledge that Ms. Cristobal and her husband have is unaware. She did have an interpreter with her at her proceeding. She is not at a university level of English. She did not understand what was happening to her. She was told by a man that she trusted, her legal representative, that he was filing an appeal for her. He stated that it was... Do you know when she went to your office? You're in the office that filed these papers that the Catholic Charities referred her to? Yes, Your Honor. Okay. And it was...I'm sorry. Yeah. So what date did she go to your office? It was September 23rd, 2004...2003. That's the date that the affidavit was... The affidavit was signed September 24th of 2003. And she stated, at this time it has been explained to me what has happened and that we're seeking reconsideration before the Board of Immigration Appeals. At this time. That is what she did. She used due diligence. She tried to find out what was happening to her. As this Court is aware, she also complied with Lozada in this case. She notified the notary of what was...that she was going to seek a complaint with the State Bar. She filed an affidavit outlining the agreement that they had, that she had paid him over $5,000, or $5,000 in increments of $1,000 to $500, over a period of time to represent her. He didn't have the right to represent her. It was fraud from the beginning. In fact, in the asylum application, he did not even sign it as the preparer. Although indicating that she was fluent in English. Which she clearly was not. As she stated, she had to take an interpreter with her to an asylum interview. We've got this on abuse of discretion review of the BIA's denial of the question of equitable tolling. Because in the BIA's view, she sat on her rights for at least nine months. Between December of 2002 and September of 2003. It's clear that she thought something was wrong. How much she knew is not exactly clear. But they were put on notice by the government's brief. Her husband explained things to her. Obviously, whether they understood the details of everything, they clearly understood that there was a problem there. Because at that point, they started going to counsel. Now, can you tell me why it is an abuse of discretion for the BIA to say, you sat on your rights for nine months. We don't equitably toll the time. First, your honor, this court stated in a bill that the deadline for filing the motion to reopen is told, quote, until the date petitioner conclusively learned of the deficient representation. Conclusively learned of the deficient representation. When did that happen? September. September of 2003. When did she file? October of 2003. In addition, her matter was still pending before this court. The notary had filed a seemingly deficient petition for review, although timely, before this court. Our office notified this court in a motion to remand at that time, stating that that had been filed as part of an ineffective assistance of counsel claim, which was pending before the motion to reopen. This court did deny remand and did deny that Ninth Circuit, did deny the issue of whether or not the board abused its discretion when it denied the untimely notice of appeal and found that the board did not, that they rightfully denied Mr. Picasso his notice of appeal. That was not done until July of 2004, well after the filing of this motion to reopen. So truthfully, did she conclusively learn until July of 2004? We would argue not. She filed the motion to reopen as soon as she learned from her attorney that fraud had been committed against her. Is there anything in the record to show the number of lawyers she sought out in those nine months and what, if anything, they told her? I can quote from her declaration, Your Honor. After reading the respondent's brief, my husband tried to hire an attorney to help. Most of these attorneys told him they do not handle Ninth Circuit and that I should return to Mexico. I did not know what to do. So through Catholic Charities, I was told to come to the law offices of Minolca and Glazier and Bennett, our office. My new attorney has explained what has happened from start to finish from the time I filed my asylum to present, and I am scared. At this time, it has been explained to me that we are filing a motion to reopen before the Board of Immigration Appeals. So the answer is really no. We don't know what other than our attorney. Yes, Your Honor. I can only read from the administrative record exactly how many that she knew. All we know is that there were, what was it, most of the attorneys, which means we know there are a number of attorneys. Yes, Your Honor. But we don't know what that number is. No, we do not know exactly how many people she saw. Or how soon after December that they began consulting with the attorneys. No. And again, in December, what she knew was that something was wrong. Her husband read the brief, not her, and stated, we need help. We need help. Thank you, Counsel. Just one more question. Declaration implies that she learned of her deficient representation in September of 2003. When was your office first contacted? In September of 2003. It was at that time. Yes, Your Honor. Thank you. Thank you, Counsel. We'll give you the two minutes you asked for. Thank you, Your Honor. Good morning. May it please the Court. My name is Cindy Farrier, and I'll be representing the Attorney General in this matter. The sole issue before the Court is whether the Board abused its discretion when it denied the motion to reopen for failure to show the requisite diligence. The answer is clearly that it did not abuse its discretion. The Board, based upon the information that it had, which was the only information it has was in the actual affidavit, reasonably determined that it could not find that Petitioner had exercised diligence in pursuing her immigration case. It simply did not have enough information to find that she had exercised the requisite diligence. The only information that it had seemed to suggest that she learned of the error when her husband read the respondent's brief. What do you mean, seemed to suggest that she learned of it then? How did it? The record doesn't show that she learned of it then, that there was a problem? Yes, yes. In fact, it does show that. It showed that it gave her cause for concern in the words of Albio de Leon. All right. So she got cause for concern then. What was it, December? Excuse me, December of 2000. And then she says, after that, her husband went around and saw a number of lawyers, made efforts to get lawyers, was unsuccessful, and finally got the Catholic Charities, which referred him to this law firm. And when Catholic Charities referred him, they went to a law firm. And you're saying that you wanted to deport them because they didn't put in the specific lawyers and the dates. Is that right? What I'm saying is that the Board did not abuse its discretion by finding that the petitioner hadn't shown to them that she had been working on her case. All that they knew was that she apparently learned of the problem in December 2002 and didn't file a motion until October 2003. Explain why. She went to a number of lawyers, and the first time she could see a lawyer was in September and then immediately filed the petition. Well, they don't make clear when they actually retained the petitioner's counsel. They say, as I recently learned, but it doesn't make exactly clear. And, again, it doesn't make clear. It certainly could be read as not clear, or it could be read with a little generosity. Correct. To say that that's when they went to the lawyer and they filed the affidavit. Correct, but it's not. Your main concern is with the period in between, the nine months or so. Yes. And the whole case comes down to whether you have to specify each lawyer you went to and the date on which you went and what you were doing on the intervening days and why you didn't go every day to see a lawyer. Or whether you can just say, during this period, we were going from lawyer to lawyer. Well, that's a fairly long period of nine to ten months to be going to a lawyer to lawyer. Even in all of the cases, the equitable tolling cases, where in this court where equitable tolling has been applied, persons have been able to learn of the error and retain counsel and file a motion within the tolled period or within the renewed period. And I guess all of the cases within the court make pretty clear that dates are very significant in evaluating these claims of equitable tolling. And when fraud was learned of, discovered, how it was learned of, what efforts were made. I don't find, for instance, in El Vio de Leon, which seems to be the principal case where there's a one-year delay between the time you became concerned and the time he filed, I don't find very specific dates about what he did during that entire one-year period. In that particular case, he became concerned with the performance in 1999, immediately went out, retained an attorney, filed a FOIA request within a month, didn't receive the FOIA request or the FOIA until April 3, 2000, and then filed the motion within- Where does it say when he retained the attorney? It just states it within the- it states that he went out to find an attorney, I think it was immediately or shortly thereafter. It doesn't say the exact date that he retained the attorney. But in that case, the thing to note there as well is that the period to file a motion to reopen was for Nicara, so it was 238 days that the petitioner had to file the motion to reopen in that particular case. This is a regular motion to reopen where the period is 90 days. I don't find anything here about the kind of specificity in this case that you're demanding here. I don't see anything about when he, during this period, when he went to an attorney, how long it was, anything like that. I can tell you if you- it's at approximately, let's see, before 10, F3rd, at 10, I think, 1090. I guess it's just- Unfortunately, I've got another one of these printed things. I've got 1099 and 1100 are the- look to me like the pages that have got the dates on it. Yeah, and again, like there the petitioner had reason for concern in 99, didn't actually file the motion until quite a bit later, but there what the court found was a significant event was the actual receipt of the entire case file so that they could conclusively learn that there had been fraud. Here, the only point that I'm trying to make is that the Board doesn't abuse its discretion in this particular case where there's nothing that says when the petitioner specifically or conclusively learned of the fraud. And I know that there are generalities in here, but the Board doesn't abuse its discretion when there aren't dates listed for it or even broad guidelines, broad dates listed for it to consider. How do you distinguish the Rodriguez-Lawrence case? Let's see. It seemed to me that it was abuse of discretion not to allow the equitable waiver. In that one, they had- the Board denied the motion in June of 2000, which was the motion which was triggering the fraud, apparently. And the new motion with the new counsel was filed within a month, within July of 2000. So they learned of the fraud and they retained counsel within a month. I'm not- They were, in this case, in September when they went to this law firm, was at that time they knew and it was one month later when the filing took place. Well, the only- the point is simply that the affidavit doesn't make- such that they knew. So that it could have been, you know, although it's quite unlikely, it could have been any time within that nine-month period from when they read my- read the petitioner- or the respondent's brief to the date they filed the affidavit. Well, Ms. Tanner cited to us a provision on- in El Villo de Leon, and I believe it's page 1100, where the court concludes that the motion to reopen was told to April 3, 2000, the date he conclusively learned of Mendez's deficient representation, Mendez being the notario rather than the attorney. Is that the standard that we're to apply here, conclusively learned? And if so, at what point can we say that Ms. Zavala conclusively learned of her misrepresentation? The court's case law with regard to equitable tolling has clearly been evolving. When it began with the statement initially in Socop Gonzalez, it was that they took due diligence and reasonable diligence in discovering the fraud and the error, and then acting upon it. Now, here the standard, or at least as it's set forth in El Villo de Leon, is conclusively learned. That particular case involved a NACARA motion to reopen. Well, that gives them a longer time period. Right. Does that- are you suggesting that conclusively learned is a different standard under NACARA than it would be here? I wish I could suggest that, but I don't think so, yeah. So, if that is the standard, however, that the court does need to apply based upon the language in El Villo de Leon, there is simply nothing within the affidavit in this case which shows when it was conclusively learned. Well, it's clear that it was- that we can say that it was conclusively learned in September. Now, whether it was also- she also had enough to go on to know that she conclusively learned that there was a serious problem requiring immediate legal attention in December of 2002 is the question here, isn't it? Yes. And the problem comes up in simply- and I'm not necessarily suggesting this with regard to Petitioner's case, but it does seem to present itself when you do have reason to know of a problem, and yet in all these ten months go by, what's to say that it couldn't be years upon years before someone comes up and now says, well, now I understand. Now I know. I finally got counsel, and I know. And, again, I'm not suggesting that these people didn't try to retain counsel. They've said that they did. But the problem is what happens when people don't act with any diligence and then, in fact, once- but once they do retain attorneys, then they go ahead and they file the motion. That's where the problem comes up. And in this case- Well, we could wait for a case like that. You could. You could, and this case doesn't necessarily bring that up because the board said specifically that it just simply didn't have enough information. It simply didn't know when the counsel was retained or when the Petitioner understood that she had actually had misrepresentation. So in this case, it's not a particular issue. However, it's clear that the board didn't abuse its discretion in finding that it didn't have enough information. Thank you. Thank you. Just briefly, I'd like to refer to a case cited by Judge Nelson, Rodriguez-Larez. In that case, this court provided, it is utterly plausible that an immigrant would not understand complex immigration proceedings. Aliens in extremely vulnerable positions are subject to removal to not lose their rights because they believed in a legal representative's assurances to protect their interests. But at that point, they'd left off dealing with the notario, and they knew that they needed help someplace else. At that point, Your Honor, the notario still had a petition for review pending before this court. Yeah, but they also know, as a result of Ms. Ferrier's brief in December of 2002, that they've got some additional problems here that don't seem to have been addressed adequately by their representative. I'm not able to state exactly what she understood. Again, she, her first language is Spanish. Well, Judge Riley said she knew she had some problems. She knew something had happened, and she went to seek other immigration terms. It's actually a little stronger than that. If I'm looking at her affidavit, my husband's first real involvement in my case was our receipt of respondent's brief written by Cindy Ferrier of the Office of Immigration Litigation. He explained to me what had happened based on the brief. Yes, Your Honor, based on the brief and his interpretation of the brief. This is also government's brief. This is opposing counsel. Often, counsel will not take opposing counsel's statement as true without a sufficient factual basis. That's why, at that time, he goes on to say, he explained to me what happened based on the brief. Mr. Picasso had never contacted me. I know that if I call him, he'll want more money, so I'm sending forth this affidavit. I then, it goes on to say that she got contacted by other attorneys who told her to go back to Mexico. Is there anything else you want to add? Because you're beginning to run out of time. No, Your Honor. Just again, when did she learn of the problem? That is the time that she's needed to exercise due diligence in filing the motion to reopen. Thank you. Thank you, counsel. The case is arguably submitted.
judges: Reinhardt, D.W. Nelson, Bybee